IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

CIVIL ACTION NO. 0:08-CV-02759-MJP

| | |
|---|---|
| Robert Kevin Bolin, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER AND OPINION** |
| ) | |
| Ross Stores, Inc., Les Davis, ) | |
| Robert Kummerer, Carlene Stewart, ) | |
| Dave Mucciarone, Vincent Goree ) | |
| Jeff Young, and John Doe, Jointly ) | |
| and Severally ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This matter comes before the Court on the motion of Defendants Ross Stores, Inc., Les Davis, Robert Kummerer, Carlene Stewart, Dave Mucciraone, Vincent Goree and Jeff Young (hereinafter "Defendants") to dismiss all of the causes of action in the Amended Complaint with the exception of Plaintiff's Fifth Cause of Action for violation of both the South Carolina Interception of Wire, Electronic, or Oral Communications (§§ 17-30-10 – 17-30-145) and the Federal Wire and Electronic Communications Interception and Interception of Oral Communications (18 U.S.C. §§ 2511 – 2520) (hereinafter wiretap claim).

## PROCEDURAL HISTORY

On July 3, 2008 Plaintiff Robert Kevin Bolin (hereinafter Plaintiff) filed his original Complaint containing nine causes of action. Defendants, with the exception of John Doe, were served July 7, 2008. The case was removed to this court on August 6, 2008. On August 13, 2008, Defendants filed a Motion to Dismiss all of the causes of action except the Sixth (now Fifth), alleging a violation of the federal and state wiretap laws. Defendants filed an Answer with respect to this cause of action. On September 3, 2008, Plaintiff filed an Amended

Complaint. The Amended Complaint eliminated three causes of action (breach of covenant of good faith and fair dealing, negligence, and civil conspiracy) and added limited new factual allegations. Defendants withdrew their initial Motion to Dismiss and thereafter moved to dismiss all of the causes of action of the Amended Complaint with the exception of the wiretap claim and with respect to this particular claim, Defendants again answered. Defendants sought dismissal of the Amended Complaint's First Cause of Action (wrongful discharge public policy regulatory compliance) (hereinafter "Public Policy Claim"), Second Cause of Action (South Carolina Unfair Trade Practices Act), Third Cause of Action (intentional infliction of emotional distress), Fourth Cause of Action (negligent hiring and/or supervision), and Sixth Cause of Action (defamation). On October 3, 2008, Plaintiff filed his Response and in doing so consented to the dismissal with respect to all of these causes of action except for his Public Policy Claim. The only issue which remains before the Court is whether the Plaintiff has stated a valid cause of action for alleged wrongful discharge in violation of public policy as stated in the First Cause of Action.

## FACTS[1]

Plaintiff was formerly employed by Ross Stores, Inc (hereinafter "Ross"). The other Defendants are employees of Ross. According to Plaintiff, Carlene Stewart "began a campaign, with the assistance of the other defendants, to harass and ultimately terminate plaintiff in any way possible." Plaintiff further alleges that "prior to September 27, 2007, either Les Davis, Robert Kummerer, Carlene Stewart, Dave Mucciraone, Jeff Young (or someone acting under their authority) instructed John Doe to listen to plaintiff's phone calls and record these

---

[1] The facts are taken from the Amended Complaint. Given that this arises in the context of a Motion to Dismiss, the Court is obligated to accept as true all well-pleaded obligations. *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130 (4th Cir. 1993).

2

conversations." According to Plaintiff, all of the Defendants were aware of this activity and on September 27, 2007:

> Plaintiff telephoned his attorney ¼ to discuss legal issues that may occurred (sic) or may occur. This conversation involved very sensitive information which if released could cause the plaintiff great harm and embarrassment, both physically and financially. Defendant's (sic) recorded this conversation and attempted to use this to terminate plaintiff. After a call from plaintiff's attorney, defendants still insisted on issuing a written memo to plaintiff about poor judgment and plaintiff signed this document.[2]

Plaintiff believes that the harassment from the Defendants began to increase dramatically after the September 27th incident. Plaintiff alleges that he and Vincent Goree had words about an incident in which Goree is alleged to have provided false information about Plaintiff to Plaintiff's supervisors. Plaintiff contends that Goree reported Plaintiff as having physically threatened him (Goree), which caused Plaintiff to be discharged on March 10, 2008, without investigation.

## STANDARD FOR MOTION TO DISMISS

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In assessing the merits of a motion to dismiss, the Court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b(6) motions to dismiss, in particular documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v.*

---

[2] The memo, which is attached as Exhibit B to the Complaint, provides, "Rob and I believe you are totally sincere in depicting this behavior to be a one time lapse in judgment and common sense. In order to remain employed at Ross, this type of behavior must never be repeated. If any similar behavior is confirmed in a subsequent investigation, you will be subject to separation from the company. You must attend the next scheduled class on Non-harassment training in order to refresh your understanding of the appropriate professional behavior expected as a member of management."

3

*Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S.Ct 2499, 2509, 168 L.Ed.2d 179 (2007).

## DISCUSSION

Plaintiff initially argues that the public policy of South Carolina prohibits an employer from discharging an employee based on information learned through overhearing a conversation between the employee and his/her attorney, regardless of the content of the conversation. However, not a single South Carolina case has recognized the "attorney-client privilege" as constituting a legally-sufficient, "clear mandate of public policy" upon which to base a public policy wrongful termination case. This Court declines to do so in this case.

Plaintiff's public policy claim attempts to state an exception to South Carolina's employment at-will doctrine. The South Carolina Supreme Court first recognized the public policy theory in *Ludwick v. This Minute of Carolina, Inc.*, 287 S.C. 219, 337 S.E.2d 213, 216 (1985). In *Ludwick*, the employee alleged she was wrongfully discharged because she honored a subpoena requiring her to appear at a hearing. As noted by the court, "the subpoena served upon Ludwick ¼ provide[d] a criminal penalty for failure to obey. She was confronted with the dilemma of choosing between her livelihood, on the one hand, and obedience to the law of the state, on the other. ... [T]he public policy exception is invoked when an employer requires an at-will employee, as a condition of retaining employment, to violate the law." 287 S.C. at 225, 337 S.E.2d at 216. Consequently, the court held that "[w]here the retaliatory discharge of an at-will employee constitutes violation of a clear mandate of public policy**,** a cause of action in tort for wrongful discharge arises**."**

The first "clear mandate of public policy" identified by Plaintiff is the attorney-client privilege. "The attorney-client privilege is based upon a public policy that the best interest of society is served by promoting a relationship between the attorney and the client whereby utmost confidence in the continuing secrecy of all confidential disclosures made by the client within the

4

relationship is maintained." *Wilson v. Preston*, 378 S.C. 348, 358, 662 S.E.2d 580, 585 (2008) (citing *State v. Doster,* 276 S.C. 647, 284 S.E.2d 218 (1981)). However, not all communications are covered by the attorney-client privilege. "In order to establish the attorney-client privilege, it must be shown that the relationship between the parties was that of attorney and client and that the communications were of a confidential nature. The communication involved must relate to a fact of which the attorney was informed by his client without the presence of strangers for the purpose of securing primarily either an opinion on law or legal services or assistance in some legal proceeding." *Floyd v. Floyd***,** 365 S.C. 56, 91, 615 S.E.2d 465, 484 (Ct. App. 2005)(quoting *Marshall v. Marshall,* 282 S.C. 534, 538-39, 320 S.E.2d 44, 47 (Ct.App.1984))internal citations omitted).

The attorney-client privilege is at best a rule of evidence and is to be construed narrowly. *Felder v. Wyman*, 139 F.R.D. 85, 88 (D.S.C. 1991). As Judge Hamilton noted,

> [T]he privilege [attorney/client] remains an exception to the general duty to disclose. Its benefits are all indirect and speculative; its obstruction is plain and concrete.... It is worth preserving for the sake of a general policy, but it is nonetheless an obstacle to the investigation of the truth. It ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle.

*Id.* (quoting *NLRB v. Harvey*, 349 F.2d 900, 907 (4th Cir. 1965)(quoting 8 Wigmore, *Evidence* § 2292 (McNaughton rev. 1961)). Plaintiff has set forth no fact in his Amended Complaint that suggests his termination in anyway damaged, harmed, or undermined the integrity of the attorney-client privilege. Indeed, he has not alleged that the privilege, if one ever existed, has been destroyed. Plaintiff has not alleged he was forced to violate the attorney-client privilege. Nor has he alleged he was presented with the dilemma of having to violate the law in order to keep his job. Thus, Plaintiff's claim does not fit into the public policy exception to employment at-will recognized in *Ludwick*

5

South Carolina courts have construed the public policy theory very narrowly since *Ludwick*. *Merck v. Advanced Drainage Sys., Inc*., 921 F.2d 549, 554 (4th Cir. 1990). The South Carolina Supreme Court has only recognized public policy claims in cases where an employer forced an employee to violate the law such as in *Ludwick*, or the termination itself was a violation of criminal law such as in *Culler v. Blue Ridge Elec. Coop., Inc.,* 309 S.C. 243, 422 S.E.2d 91 (1992). The employee in *Culler* alleged he was terminated because he refused to contribute to his employer's political action committee (PAC) fund. The South Carolina Code, in a section entitled "Crimes Against Public Policy," expressly makes it a crime to terminate an employee because of his or her political opinion or the exercise of political rights. As such, the court held that "*Ludwick's* prohibition of retaliatory discharge in violation of clear mandate of public policy of this State extends to legislatively defined 'Crimes Against Public Policy.'" *Id*. at 246, 422 S.E.2d at 93.

Seeking to keep alive his public policy claim, Plaintiff argues his termination was a violation of criminal law. Specifically, he argues that the federal and state wiretap laws make it illegal to intentionally use or attempt to use the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of the law. *See S.C. Code Ann*. § 17-30-20 (Supp. 2008); *see also* 18 U.S.C. § 2511(1)(d). Unlike the statute at issue in *Culler*, this statute does not expressly make it a crime to terminate someone based on information which was allegedly illegally obtained in violation of the wiretap laws. Even if this law could be read to support a claim that the alleged use to terminate an employee of information illegally gleaned from a conversation would subject the offender to criminal punishment, an issue the court need not decide at the present, it would still be insufficient to support a public policy claim because the statue also provides for civil remedies. It is well established that no

6

common law public policy wrongful termination claim can be stated where the employee has an existing statutory remedy. *Zeigler v. Guidant* Corp., 2008 WL 2001943 (D.S.C. 2008) (no claim where employee had statutory remedy under Title VII); *Dockins v. Ingles Mkts., Inc*., 306 S.C. 496, 413 S.E.2d 18, 19 (1992) (affirming dismissal of public policy claim and stating that, "Th[e] public policy exception to the termination of at-will employees has not been extended beyond situations where the termination is in retaliation for an employee's refusal to violate the law at the direction of his employer. . . . When a statute creates a substantive right and provides a remedy for infringement of that right, the plaintiff is limited to that statutory remedy. . . . We hold this applies when the right is created by federal law as well as state law."); *Stiles v. Am. Gen. Life Ins. Co*., 335 S.C. 222, 516 S.E.2d 449, 452 (1999) ("As these cases make clear, the *Ludwick* exception is not designed to overlap an employee's statutory or contractual rights to challenge a discharge, but rather to provide a remedy for a clear violation of public policy where no other reasonable means of redress exists.") (concurring opinion); *Epps v. Clarendon County*, 304 S.C. 424, 405 S.E.2d 386, 387 (1991) (affirming dismissal of public policy claim and stating that, "We decline to extend the *Ludwick* exception to a situation where, as here, the employee has an existing remedy for a discharge which allegedly violates rights other than the right to the employment itself.").

In *Ramsey v. Vanguard Services, Inc*., C/A No. 8:07-CV-00265-GRA., 2007 WL 904526, at *2 (D.S.C. March 22, 2007), the court granted the defendant's motion to dismiss plaintiff's claim for termination in violation of public policy because the plaintiff had an available a statutory remedy under the South Carolina Payment of Wages Act to address his grievance about the alleged failure to pay wages, even though that remedy did not cover termination. Here, the State and Federal wire tap laws Plaintiff himself has invoked provide a remedy to Plaintiff, if and to the extent he can prove his allegations in the instant case. As such, Plaintiff has a

7

recognized statutory remedy and, under the rationale of the *Dockins*, *Stiles*, *Epps* and *Ramsey* decisions, Plaintiff therefore cannot state a viable claim for wrongful discharge in violation of public policy.

There are no allegations in the Amended Complaint which would call into question public policies remotely similar to those invoked in *Ludwick* and *Lawson.* As such, Plaintiff's claim fails to state a legally viable public policy cause of action and can and must therefore be dismissed as a matter of law.

Defendants are entitled to dismissal of all of Plaintiff's claims with the exception of the Fifth Cause of Action for alleged violation of the South Carolina Interception of Wire, Electronic, or Oral Communications (§§ 17-30-10 – 17-30-145) and the Federal Wire and Electronic Communications Interception and Interception of Oral Communications (18 U.S.C. §§ 2511 – 2520).

## CONCLUSION

It is, therefore, ORDERED that Defendants' Motion to Dismiss is granted.

IT IS SO ORDERED.

_____
Senior United States District Judge

February 11, 2009.